Good morning everyone. Our first case is Kangol v. Hangzhou. Mr. Johnson. Good morning. I may please the court. The central issue as you know in this case involves the Hague Service Convention, a duly ratified treaty of the United States, and we, meaning me and my firm, Professors Dodge and Gardner, we've shown that using the Supreme Court mandated analysis for treaties we've shown that this convention is in fact exclusive, meaning it excludes or prohibits methods of service which are not delineated within the convention. Mr. Johnson, can I The way I understand it, let's say it is exclusive, okay? In this case, if we were to reverse, we would have to remand and then the district court would determine whether or not your client has a brick-and-mortar facility in which the plaintiff can serve it, but if it doesn't, then the district court can authorize service by email. Is that right? Yeah, the issue there is whether one of the threshold conditions of the Hague Service Convention is whether an address is known, and that would be what the district court should have made a determination on. But that, so the district court didn't do it in this case, it would have to do it on remand, but in other cases like this, it really doesn't have all that much of effect. It would just mean that the plaintiff would have to do a little bit of work before the district court could allow email service to go to the district court and say, Judge, this is what we did to determine whether there's a brick-and-mortar address and we can't find one. And the judge, without the defendant of course having entered an appearance, will make an individual determination as to whether the plaintiff did enough to try to identify a brick-and-mortar location or a real address in which the plaintiff could serve the defendant. I think that that's correct, Your Honor. I think the standard is reasonable diligence in a variety of ways. I think if you come up with an address, then you've got a known address. I don't think a plaintiff is necessarily stuck with that address. They can certainly investigate further. There are private investigators in China. You can, you know, you may come up with an address. There's quite a few cases, at least within the district court, where they have done exactly what the district court did here is bypass F1 and go directly to F3. And my question is, since what is the position as to whether or not there's a hierarchy? Was there a need to do what Article 1 of the Hague Service Convention permits, which is after reasonable diligence, go ahead and serve, but could the district court in this particular instance skip F1 rule, I'm sorry, F1 and go directly to F3? Yeah, I'm glad you asked that, and I'd love to clarify that. There's certainly, as many cases of health, there is no hierarchy between F1, F2, and F3. However, if the Hague Service Convention applies, except under one circumstance I can talk, discuss, F1 is what you are stuck with. You must proceed under F1. F3, just to get more into the treaty itself, which is quite comprehensive in its treatment of service of process, under Article 5B of the Hague Service Convention, alternate means of service are allowed through the Hague Service Convention. And that will be the circumstance where you could use F3 to, if, for example, email, you could say, okay, well, another means that the court may order is service of email, and that can be effectuated through Article 5B, using the central authority. That would be the only circumstance where you could use 5, F3, excuse me. But if the Hague Service Convention applies, except under that circumstance, you cannot use F3. You cannot circumvent the Hague Service Convention. And so has the receiving nation accepted under 5B service of process via email? Well, the convention is technologically neutral. If you serve under, and let's ignore the other possible ways of service, such as letters of regulatory, but through the central authority, if you serve through the central authority, if the do so through any means that it wishes, including email. But that question has been answered by the Hague Service Convention and frequently asked questions already, correct, by the receiving nation? Yes, it's up to the receiving nation. Now, specifically with respect to email, the documents you referenced, the conclusions and recommendations, the practical handbook that I referenced, they're all quite clear that email fits under Article 10A of the Hague Service Convention as a postal channel. But when we look at the Hague Conference on Private International Law, there was a question asked, question 23, which was attached to the motion to vacate. In particular, has your state objected to service under Article 10A? And what was, and was that question addressed as far as whether or not postal channel was  China objects under 10A, and you'll find that in many places. I don't have a specific page number, but it's very clear that China has objected to postal channels for service. Well, and the issue here is China not just, does not just object to postal channels, it objects to email specifically as well. Yes, if you look closely, they have specifically objected to email, but their official objection that's lodged with the Hague Conference on Private International Law is, as it must be, we hereby object to service through Article 10A. It's more of a formal statement rather than specifically we object to this kind, not that kind. It's, they object, a blanket objection to service of process through 10A. I want to zoom out a bit. Why did your client wait to object to the method of service? Would it have been too difficult to engage in these email settlement negotiations and lodge an objection at the same time? It certainly could have. I don't think that if you look at, for instance, the filers case, that's obligatory. You have the option to, you may object under Rule 12 to personal jurisdiction initially, or you may wait until after judgment has been rendered. That's an option. Now, I think in this case, it's been suggested that this was some sort of a stratagem. I would suggest my client just didn't know what to do, went through a series of attorneys, and I don't know that any of them suggested, you know, any sort of defense that they might have, and I don't know if they did or not, but they simply attempted to try to settle the case for a period of time. And when that became impossible after they actually collected money, that's when we became involved. And very shortly thereafter, we filed our objection to service of process. Let's assume there is a remand in this case, and this is just for the purposes of the question. Does the district court have authority on remand to look at the Coney Island question that you all have, that's now been raised, you know, subsequent to what was happening in this case, but now we do have the Supreme Court say, reasonable time. Yeah, I'm glad you asked that question. The Coney Island case, when you look at it, is not actually inconsistent with this topic, and let me explain. The Seventh Circuit standard, which has been, you know, explicated a little bit inconsistently, but the Seventh Circuit standard is that a 60-B-4 motion has unlimited time unless there are exceptional circumstances, and it's that exceptional circumstances that makes it not something that Seventh Circuit has simply rejected, and now Coney Island has overruled Seventh Circuit. The Seventh Circuit standard remains. The exceptional circumstances standard is the one that we brought up in our initial motion to vacate, and that's the one that the district court adopted, that, you know, a motion may not be, a motion under 60-B-4 may not be untimely absent exceptional circumstances. Now, they, you know, their primary argument in the district court was that we waited too long, and that I don't think, I mean, obviously the district court did not find that we waited too long, and they did not argue that any exceptional circumstance applied. That exceptional circumstance language is in the FILOS tech case, and that, I think, is the correct standard. FILOS 1 or 2? Are you referencing 802 F-3905, FILOS 2, where we answered the question that there's a strategy that can be decided, of course, by the party to I think that's in the same case that talks about both of those. I'm sorry, I don't have the difference in citation, but the district court's opinion says, has that exceptional circumstance language. And again, I think we affirmed the exceptional circumstance where discovery would be ruined, or we gave examples of when you must actually come in under 60 and not wait until after the default judgment. Yeah, I mean, I think there's multiple issues here. For instance, a waiver, which is a separate question from untimeliness and Tony Island, and I think you have to dig a little deep to see what the Seventh Circuit has meant by a case that first cited that, and I'm sorry, this is a case I did not say in my brief, but with your permission, I can give you that citation. That's Packerar v. Henley or Hurley, 611 F. 2nd, 179, page 181, Seventh Circuit, 1979. That's, I believe, where the Seventh Circuit first mentioned the exceptional circumstances as being the basis for an untimeliness objection to a 60B4 motion. Do you want to save the rest of your time for rebuttal? Let me see if there's anything I need to say. I think I've addressed waiver. If we get into Chinese law, I can give you multiple reasons why you may not wish to and don't have to. I'm also happy to address any of the threshold issues that they claim. I think we've talked about the known address. We've talked about untimeliness. Their waiver argument, I don't think they didn't make it in the district court, and at any rate, I don't think they can show it, as we said in the brief. And I think with respect to Chinese law, if that comes up, I think the answer is in the Hague Service Convention itself. It contemplates that you leave it up to China under Article 5B. At any rate, Article 19 refers to an explicit permission, as the United States does, that no one has been able to show that China explicitly permits service via other means. And as our Chinese amicus pointed out, the Ministry of Justice of China has explicitly stated it's not proper service. And Article 294, if you dig into Chinese law, shows that Chinese law is absolutely opposed to this. And with that, unless you have further questions, I would reserve any time for rebuttal. OK, thank you, Mr. Johnson. OK, Mr. Zeleny. Good morning. Good morning. May it please the court, I'm Nicholas Zeleny from Cal P. Halter and Griswold, and I represent the Appalachian LLC. The district court did not abuse its discretion in denying the motion to vacate for at least three key reasons here. First of all, the appellant failed to act within a reasonable time in moving to vacate. It waited on the order of nine months to do so, which, according to the recent decision in Coney Island, is simply an unreasonable time period to wait. And there's a close parallel between that case and the present case in that the appellant here only moved to vacate once the judgment was enforced. And that was the same scenario that the Supreme Court addressed in Coney Island and found that in that situation, it was not reasonable to wait as long as the party there waited and the same rationale should apply here. The appellant provided absolutely no basis to find that its neglect in moving earlier was excusable, such as not knowing about the case pending. And under those circumstances, courts within the circuit have found... But in that case in Coney Island, the court said, I'll quote, in the context of a default judgment, it might be reasonable for a defendant not to seek relief before learning about a plaintiff's attempted enforcement. Isn't that exactly what happened here? Your Honor, I would submit that there were attempts made to resolve the matter by four separate counsel on behalf of the appellant before the current counsel was engaged and then moved to vacate. So there were some level of participation, which gave at least the indication that the appellant was aware of the suit and it only raised settlement, never raised any potential defense as to lack of service or personal jurisdiction. But what's wrong with that? I mean, it didn't waste the court's time or anything along those lines. What's wrong with them attempting to settle the case before they go running back into court and asking for the court to relieve them of the default? Your Honor, there is an interest... I think that's how we want it. At least as judges, I think that's what we want to happen. I don't know if it's necessarily, Your Honor, mutually exclusive. So I think that settlement discussions can still proceed parallel to an appearance being entered, an answer being filed, and that way you respect the court's... That's true, they can proceed parallelly, but our law doesn't say they have to proceed in parallel or in tandem. Well, Your Honor, I would submit that under Rule 12H, there's a waiver if a defendant fails to answer altogether, they can potentially waive defenses that they would otherwise be allowed to assert. But I'm concerned about Phylos. Why didn't we bless that conduct here in the course of action here in Phylos? I think, Your Honor, the distinction would be in that case, it was focused more on asserting the defense itself as to lack of personal jurisdiction, that that's sort of a collateral attack on the judgment that could be asserted under that law at the time, that that could be asserted at any time. However, with the new decision in Coney Island, there's a limit on when that defense can be brought up. It can be brought up according to Coney Island when there has been a motion or an attempt to enforce the judgment, which is procedurally, is that not where we find us today in this case? Your Honor, it could be brought up when trying to collaterally attack a default judgment. However, in this case, that clock began to run in May of 2024, and they waited nine months to file the motion to vacate. So measured by Coney Island's reasonable time standard and the fact that it specifically said that courts cannot keep their doors perpetually open to allegations of voidness, that language holds. The motion to enforce the judgment was filed in May? I might have that date wrong. Your Honor, the default judgment was entered in May, and at that point the judgment was effective, and at that point, that was when the appellant engaged a series of counsel to try to resolve the matter. No, I'm asking, when was this supplemental? Maybe that's the date I have misinterpreted the enforcement action. When was that started? If Your Honor is referring to when the judgment was collected upon, that was, I believe, in January of 2025. That's what I thought. Yeah, sorry if I misunderstood. No, that's fine. And so the language in Phylos says that you ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds. And so, what I'm hearing this morning is that language from Phylos is no longer applicable after Coney Island. I think, Your Honor, it's applicable to the extent that a party defendant can raise a challenge to jurisdiction, but it has to be done within a reasonable time. I think that's how those two cases can be read in harmony with each other. So that was your first point. I'd like to hear your second point. And the second point is somewhat related, Your Honor, and it's the question of waiver. And courts in this circuit, such as Lowry, have found that where a party, where a defendant engages with counsel for the plaintiff to discuss settlement, can be found to have waived certain defenses, such as lack of personal jurisdiction or improper service, when it doesn't actually file an answer, it doesn't file a motion under Rule 12, and it simply acts silent and proceeds to lead the plaintiff to believe that it's not going to challenge those defenses. And so, in this case, right after the complaint was served, the defendant immediately engaged counsel, it reached out to counsel for Tangle in an attempt to settle it. It did that again once before the default judgment motion was filed, and after the default judgment was entered, it engaged two more sets of counsel. So on all these occasions where it reached out and tried to settle the case, never bringing up a lack of service or a lack of personal jurisdiction, those are the types of scenarios where waiver is an appropriate finding. And I think counsel for the appellant made the argument that waiver wasn't specifically addressed below. However, as discussed in our brief here, the Ambrosia case holds that if the record on a certain issue is fully developed, like here, on an issue like waiver, then the court can still make a ruling as a matter of law that waiver has occurred. And the third main ground for affirming here is under Rule 4F3, the district court found that service by email would be reasonably calculated. Mr. Zeleny, can I ask you a question about that? If we do decide this case in your favor under Rule 4F, we create a circuit split, I believe, with the Second and the Third Circuits. We would be the first court of appeals to rule in that way. Is that right? Your Honor, I would say that given some of the decisions by, for example, the Fifth Circuit in the Gotek case, and that case did involve serving a Chinese and other decisions that were cited in our brief also discussed the fact that Rule 4F3 is not displaced by the Hague Convention. They can be read co-extensively. And so to the extent that the Hague Convention was never intended to abrogate the requirements under Rule 4F3, a decision in Kengel's favor here affirming the district court ruling would not necessarily create a circuit split as far as that specific issue. And I just wanted to elaborate further on that, that those decisions found as well that there's no exhaustion requirement, which the appellant tried to make the point today that it would have been necessary to try other methods of service before resorting to email service. I want to make sure that I appreciate the argument. His suggestion is that the parties could have chosen either to use the Hague Service Convention or F1 or F3 to properly serve the defendant. Your Honor, it's our position that the rule to be read, to give it its full force and meaning, and it's reading it on its own, it allows for a district court to order service by any means that are not prohibited by international agreement. Even though in the Supreme Court and looking at the case Waterflash, they made the determination that this and I believe it's Schlunk, the Supreme Court case that suggested that the Hague Service Convention provides the certain methods that will be used for all signatories onto the convention. And so if those are the certain methods that are to be used, I guess that the question becomes why would then district courts be able to elect any alternative method if the process of service is to come or be pulled from the Hague Service Convention? That's a fair question, Your Honor. And I believe that it can be harmonized by reading Rule 4F3 in a way that respects the provisions of the Hague Convention when it applies. And in a situation like this, based on the record before it, the district court appropriately found that email was reasonably calculated to provide notice, and it clearly did. Why would the Hague Service Convention not apply in this instance? There are a few reasons why in this instance, Your Honor, and part of it was it doesn't specifically prohibit email. So I think that as a threshold matter of statutory or treaty interpretation, if the treaty itself doesn't explicitly prohibit a certain method of service, and the signatory country like China did not specifically object to service by email in its questionnaire response, or They did, though. As reflected in 60-E, is request transferred by email acceptable to the Chinese Central Authority? The answer was no. Your Honor, I know that there was a questionnaire where the majority of countries still found that email was not within the scope of Article 10A, so it seems to be that until there's a formal amendment to the treaty, that it would be difficult to read into it a prohibition on email service. But I believe, Your Honor, that the court doesn't even have to get to that issue, given the other grounds to affirm and the fact that the Hague Convention is a threshold matter under Article 1. It only even applies when there's an address at which service could be made. That's what I wanted to ask you about. What efforts did your client take to discover the company's address? I can't find any record evidence of that. Your Honor, at the time of requesting service by email, it was argued to the court that under the circumstances of these types of cases where it's difficult to ascertain an address of a foreign defendant in courts in this... I know what you all argued to the district court. We can see it. It's a few lines, and they are repeated across several district court cases of this type. What steps did your client take, and is there any record evidence of those steps? Your Honor, the record evidence is what's included in the declaration that was submitted with the motion for service by email. To my knowledge, there's nothing beyond that at the time of the request. However, the record on the motion to vacate establishes this inconsistency. The declaration from their controlling shareholder indicated one address, but then their USPTO address was completely different, and then there was a different address on their website. This all goes back to the difficulty in why courts have ordered service by email because there's this really difficult circumstance where it's hard to determine an address, but then you have clear email addresses for each of these parties that courts have found to be an effective means of providing notice, and in this case, it was successful in providing notice. I mean by the district court, though, that we don't have to answer this question of reasonable diligence to find a physical address. We could just move to F3. I think, Your Honor, it could be read that way and that on the record before the district court that that was sufficient for the district court to have found on that record that the address was not sufficiently known. So given the authority independent of the convention to order service by email under Rule 4 F3, we believe that the district court did not err in ordering that and then subsequently denying the motion to vacate. No, it says here I'm reading directly from the order. It says, even if plaintiff did not make reasonable diligence efforts, it is not dispositive. That's correct, Your Honor, because the district court did recognize that under Rule 4 F3 it had an independent authority to order service by email separate and apart from whether those efforts were made. And so that was my question. Could we, did the district court have the authority to sidestep the question that permits you out of the obligations under the Hague Service Convention and not make that determination? Thank you, Your Honor. That is our position that it did have that authority because under the plain language of the rule and how other circuit courts have interpreted it to not require other methods to be first used and there not to be an exhaustion requirement as to other methods of service under the rule that that did give the district court the authority here. Thank you. Thank you. Thank you, Mr. Mr. Thank you for Mr. Johnson. Do you have anything else? Just just a few words. You know, I think what you just discussed, that's the error that the district court thinking that F3 gives it some independent authority to ignore the Hague Service Convention. F3 says the central part of it is unless prohibited by an international agreement. And I think we showed that there is a prohibition. I think there absolutely would be a circuit split if you decide in their favor. Has the Fifth Circuit decided it in their favor? Well, I'm glad you mentioned that those Fifth Circuit cases are the ones that Judge Hallmeyer in her Peanuts Worldwide case mentioned as cases which endorsed service of process but never substantively addressed service of process. I believe in the Fifth Circuit case it wasn't contested whether or not service was proper under the Hague Service Convention. I think it'd be more accurate to say that the courts in those cases found that the. I'm only talking about the Fifth Circuit case. There's only one. Oh, I'm sorry. The Lars case. Okay. Well, the Lars case, that came out in our favor. They found that although it's an unpublished decision, they found that email was exclusive and was required. So is there a circuit split going back to Judge Kirsch's question as far as the second, third, and the fifth? Is there a split on this question regarding China receiving service via email? There's absolutely not a split now. Thank you. Okay. Thank you, Mr. Johnson. Thank you, Your Honor. Thank you to both counsel and we'll take the case under advisement.